Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JUDITH MARÍA BUCCIERI LUGO, FÉLIX JORGE CINTRÓN ALBERTORIO

Parte Recurrida

v.

DARREN O´NEIL LEDOUX TALLEY

Parte Peticionaria | TA2026CE00342 | Certiorari procedente del Tribunal de Primera Instancia, Sala Superior de Carolina

Caso Núm.: CA2020RF00306

Sala: 0405

Sobre: Custodia – Monoparental o Compartida, Custodia – Relaciones Abuelo (A) y Tío (A) Filiales, Custodia Provisional |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, a 16 de junio de 2026.

Comparece ante *nos* Darren Oneill Ledoux Talley (Ledoux Talley o peticionario), y nos solicita que revisemos y revoquemos una *Orden* emitida y notificada el 18 de febrero de 2026, por el Tribunal de Primera Instancia (TPI o foro primario), Sala Superior de Carolina. Mediante dicho dictamen, el TPI declaró *No Ha Lugar* la solicitud para que terminen los esfuerzos de las relaciones abuelo-filiales, esto a petición del menor JDLC.

Asimismo, nos solicita que revisemos una segunda *Orden* emitida y notificada el 18 de febrero de 2026, mediante la cual el foro primario ordenó a la terapista, entre otras cosas, a que provea mayor atención al caso e insista en la reunificación del menor con los abuelos.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y *revocamos* el dictamen recurrido.

**I.**

Fruto de la relación entre los señores Ledoux Talley y Amarlyn M. Cintrón Buccieri (Cintron Buccieri), nació el 16 de enero de 2009 en Puerto Rico, el menor JDLC. Durante el mes de septiembre de 2017, la señora Cintrón Buccieri se relocalizó junto a su hijo en Florida, Estados Unidos de América. Posteriormente, en junio de 2018, ocurrió un evento dramático en el cual Cintrón Buccieri atentó contra su vida, así como del menor JDLC. Así, estando acompañada de su hijo JDLC, condujo su vehículo de motor dentro de un cuerpo de agua (mar) en Florida. Ante esta situación, fue arrestada y se le radicaron cargos criminales por negligencia. Ante el hecho de que el peticionario no residía en el estado de Florida, el Departamento de la Familia asumió la custodia del menor, colocándolo temporeramente en el hogar de Judith María Buccieri Lugo y Félix Jorge Cintrón Albertorio (en conjunto, los recurridos), quienes son los abuelos maternos. No obstante, estos no cumplieron con los requerimientos del Departamento de la Familia.

Luego, el 26 de febrero de 2019, el tribunal de Florida determinó conceder la custodia del menor JDLC a Ledoux Talley, y así, dio por finalizada su intervención y renunció a su jurisdicción. Así pues, desde el mes de abril de 2019, el menor está bajo la custodia del peticionario.

El 26 de mayo de 2020, los recurridos incoaron una *Demanda* sobre custodia. En síntesis, solicitaron la custodia del menor JDLC. Señalaron que el peticionario impide que se comuniquen con el menor y en las pocas ocasiones que se comunican, lo obliga a comunicarse en el idioma inglés porque este no conoce el idioma español. Por lo cual, solicitaron que se ordenara a la Unidad de Trabajo Social (UTS) una investigación de urgencia para que se

pudiera corroborar el alineamiento, aislamiento y maltrato psicológico que ha cometido el peticionario en contra del menor de edad. El 15 de diciembre de 2020, el peticionario presentó una *Contestación a Demanda.*

Luego de varios incidentes procesales, el 23 de febrero de 2021, el foro primario emitió una *Orden* mediante la cual determinó que el peticionario debía coordinar y proveer la información de quien proveía las terapias psicológicas del menor y solicitar que se incluyera la situación con los abuelos a la brevedad posible. Además, declaró *No Ha Lugar* la solicitud de los recurridos para que el menor fuera trasladado a Puerto Rico. Así las cosas, el 19 de mayo de 2021, la Trabajadora Social de la UTS presentó un *Informe Social Complementario.* Acaecidos varios trámites procesales, el foro primario ordenó a la UTS que se actualizara el informe social. Así, el 9 de agosto de 2022, la Trabajadora Social presentó un segundo *Informe Social Complementario.*

El 8 de enero de 2024, la parte recurrida presentó una *Moción de Desistimiento de Proceso de Impugnación y Orden Sobre Trámites e Informes de Terapias Abuelo Filiales y Terapias del Menor de Edad en Proceso de Reunificación.* En la misma, la parte recurrida desistió de la solicitud de custodia del menor JDLC. En consecuencia, el 9 de enero de 2024, el foro primario emitió una *Sentencia* mediante la cual ordenó que:

1. El Sr. Darren O. Ledoux Talley mantenga la custodia del menor.
2. El menor continue recibiendo servicios psicológicos con el fin de recibir apoyo en su proceso, sanar y continuar su desarrollo adecuadamente.
3. Las partes se abstengan de emitir comentarios negativos que atenten contra el proceso de sanación del adolescente.
4. Las partes mantengan una comunicación cordial por el bienestar del menor.
5. Que la Dra. Anaiz Rodríguez, M.Ed. Coastal Virginia Counseling Virginia Beach, continue la terapia dirigida a incrementar la relación entre abuelos y nieto. Todo con el fin de llegar a una reunificación adecuada.
6. Se ordena que se provea informe en 6 meses del progreso del menor por la terapista elegida. Corresponde al padre hacer gestión para que el Tribunal lo reciba.

El 5 de febrero de 2024, la parte recurrente presentó una *Urgente Moción de Desacato a Proceso Terapéutico y de Reunificación [...]*. Arguyó que el peticionario no había coordinado la continuación de citas para la reunificación del menor con sus abuelos maternos. Así pues, sostuvo que el comportamiento del peticionario ha sido uno pasivo-agresivo que resulta en la enajenación del menor de sus abuelos y de su familia materna. Acentuó que, Ledoux Talley no hace nada y simplemente aparenta cumplir con las órdenes del Tribunal, pero no está comprometido con el proceso de reunificación.

Ese mismo día, la parte peticionaria presentó una *Réplica a Urgente Moción de Desacato [...]*. En esta, explicó que ha apoyado el proceso terapéutico de su hijo adolescente. Destacó que, la única razón por la cual no se coordinó terapia para el menor durante el mes de enero de 2024, fue que la COVA Counseling – Dra. Anaiz Rodríguez se encontraba en proceso de mudanza. El 28 de junio de 2024, la parte recurrida presentó una *Moción en Cumplimiento de Orden y Presentación de Informe de Terapista [...]*. Allí, planteó que tras llevarse a cabo la mudanza de la Dra. Anaiz Rodríguez a la Florida, no han ocurrido avances significativos en el proceso de reunificación, presentando un estancamiento que es en detrimento al proceso terapéutico. Consideró que, es importante que las terapias se efectúen de manera presencial. Así pues, solicitó que el Tribunal entrevistara al menor y pudiera observar su actitud respecto a los abuelos maternos, que demuestra que el proceso requiere de la intervención de un terapeuta de mayor impacto para este proceso.

El 1 de julio de 2024, el TPI emitió una *Orden* mediante la cual ordenó que se comenzara la transición y transferencia del caso de inmediato al Dr. Millán, quien sería el nuevo terapista. Subsiguientemente, el 16 de julio de 2024, Ledoux Talley presentó

una *Moción en Cumplimiento de Orden.* Sostuvo que se debe continuar con el procedimiento con el Dr. Millán y que este prosiga con el proceso terapéutico iniciado por la Dra. Anaiz Rodríguez. El 3 de marzo de 2025, la parte peticionaria presentó una *Moción Urgente en Cumplimiento de Orden – Informe de las Relaciones con los Abuelos* mediante la cual anejó el Informe preparado por el Dr. Millán. En dicho Informe, el Dr. Millán dispuso, entre otras cosas, que:

> [f]rom the moment I took the case my goal was to have Jayden's maternal grandparents and aunt to be able to see Jayden in person, to reunify them. We accomplished such goal, with Jayden dad's and maternal grandparents' collaboration, on 11/27/2024. At this point I recommend that both parties try to make it work between to set dates for Jayden to see his maternal grandparents and aunt.

Así las cosas, el 4 de marzo de 2025, el foro primario emitió una *Orden* mediante la cual dispuso que el Dr. Millán debía proveer el seguimiento en seis (6) meses adicionales para ver progreso. Entretanto, el 6 de octubre de 2025, la parte recurrida presentó una *Urgente Solicitud de Orden – Terapista*. En esta, señaló que el menor se mudó junto a Ledoux Talley al estado de Alaska. Por lo cual, solicitó que se emita orden a la nueva terapista Dra. Jeannie Jay para que esta continúe con el proceso de reunificación y para que rinda un informe de progreso, según había sido ordenado por el Tribunal.

El 1 de diciembre de 2025, la parte peticionaria presentó una *Moción en Cumplimiento de Orden e Informativa Sobre Terapias Abuelos-Nieto en Alaska.* El 22 de enero de 2026, la parte recurrida presentó una *Urgente Moción Presentando Informe de Terapeuta de Relaciones Abuelo Filiales* mediante la cual presentó el Informe rendido por la Dra. Jeannie Jay. Además, adujo que de una lectura del Informe no existe duda alguna que la falta de compromiso del peticionario en fomentar las relaciones con la familia materna y el que tuvieran que recurrir a los trámites legales para poder tener una

relación con su único nieto afectaron de manera grave el estado emocional del menor. El 16 de febrero de 2026, la parte peticionaria presentó una *Moción en Cumplimiento de Orden [...] y en Solicitud de Orden de Finalización de Reunificación Terapéutica del Menor con sus Abuelos.* Esgrimió que, el menor ha sido claro y enfático con su terapista de sus sentimientos y deseos y le expresó que lo que desea es acabar este asunto que lo mantiene con estrés psicológico y emocional. Por consiguiente, solicitó que se ordene la finalización del proceso de reunificación terapéutico del menor con sus abuelos maternos.

Así, el 18 de febrero de 2026, el foro primario emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud para que terminen los esfuerzos de las relaciones abuelo-filiales a petición del menor JDLC. Ese mismo día, el TPI emitió una segunda *Orden* mediante la cual ordenó a la terapista, entre otras cosas, a que provea mayor atención al caso e insista en la reunificación del menor con los abuelos.

Inconforme, el 19 de marzo de 2026, el peticionario compareció ante *nos* mediante una *Petición de Certiorari* y alegó la comisión de los siguientes errores:

> **Primer Error**: Erró el TPI al declarar No Ha Lugar la solicitud de orden de finalización de reunificación terapéutica del menor con sus abuelos, sin tomar en cuenta la solicitud del joven JDLC de cesar las terapias porque le están haciendo daño emocional y afectando su vida.

> **Segundo Error**: Erró el TPI al ordenar a la terapista Jeannie Jay a continuar y mantener un proceso de reunificación terapéutico entre JDLC y sus abuelos a través del Tribunal, en completa contravención a lo recomendado por la propia terapista, y arguyendo el TPI que "las razones que dio el menor para no relacionarse con sus abuelos al inicio del caso son triviales y cargadas de impresiones desacertadas y exageradas", y mas aun, cuando el proceso terapéutico post sentencia lleva más de dos (2) años, incluyendo tres (3) terapeutas que rendieron todos informes de progreso al Tribunal, completándose así la ejecución de todo el proceso coordinado y diseñado por dicho especialistas.

Examinado el recurso ante nuestra consideración, el 26 de marzo de 2026, emitimos una *Resolución* mediante la cual le concedimos un término de diez (10) días a la parte recurrida para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el dictamen impugnado. El 25 de abril de 2026, la parte recurrida presentó una *Moción en Cumplimiento de Orden Mostrando Causa en Oposición a Expedición de Certiorari*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. *Certiorari***

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra.* Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de

nuestro Reglamento, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025), señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A.  Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra.*

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009); *García v. Padró*, 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en

abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* Véase,

además, *Pueblo v. Rivera Santiago, supra*; *S.L.G. Flores, Jiménez v.

Colberg,* 173 DPR 843 (2008).

### B. Relaciones abuelo-filiales

El Artículo 619 del Código Civil (31 LPRA sec. 7332) establece

que:

> [c]orresponde a los progenitores que ejercen la patria potestad decidir con qué personas dentro o fuera del núcleo familiar se relaciona su hijo. Por ser un derecho fundamental, la determinación de los progenitores a estos efectos goza de una presunción de corrección. El tribunal solo puede interferir con el ejercicio de ese derecho cuando se demuestra la existencia de intereses apremiantes mediante prueba robusta, clara y convincente. Si el tribunal adjudica el derecho de visita, los progenitores determinarán la planificación del tiempo, el lugar y el modo de las relaciones autorizadas, siempre buscando el interés óptimo de los menores. A la hora de determinar el derecho de visita, el tribunal deberá tomar en consideración entre otras cosas, si esas relaciones familiares son importantes para el desarrollo integral del menor de edad, y si este ha estado bajo el cuidado temporal de otras personas.

Cónsono con esto, el Artículo 619A del Código Civil indica que:

> En caso de oposición por parte del padre o madre o tutor que ejerza la patria potestad y custodia sobre un menor no emancipado para que este se relacione con sus abuelos o tíos, se les reconoce legitimación a los abuelos y a los tíos para comparecer ante el juez. Este decidirá lo procedente tomando en consideración las circunstancias particulares de cada caso y los intereses y bienestar del menor. (31 LPRA sec. 7332a).

### III.

En el presente caso, la parte peticionaria plantea que erró el

TPI al declarar *No Ha Lugar* la solicitud de orden de finalización de

reunificación terapéutica del menor con sus abuelos, sin tomar en

cuenta la solicitud del joven JDLC de cesar las terapias porque le

están haciendo daño emocional y afectando su vida.

Asimismo, sostiene que erró el foro primario al ordenar a la

terapista Dra. Jeannie Jay a continuar y mantener un proceso de

reunificación terapéutico entre el menor y sus abuelos a través del

Tribunal, en completa contravención a lo recomendado por la propia

terapista, y arguyendo el TPI que "las razones que dio el menor para

no relacionarse con sus abuelos al inicio del caso son triviales y

cargadas de impresiones desacertadas y exageradas", y más aún,

cuando el proceso terapéutico *post* sentencia lleva más de dos (2) años, incluyendo tres (3) terapeutas que rindieron todos informes de progreso al Tribunal, completándose así la ejecución de todo el proceso coordinado y diseñado por dichos especialistas.

Tras un análisis sosegado del recurso ante *nos* y luego de una revisión de la totalidad del expediente, es nuestra apreciación que incidió el foro primario al emitir las órdenes recurridas. Esto, pues el menor de 17 años expresó que desea acabar el proceso de reunificación terapéutico con sus abuelos maternos, ese es su deseo. Surge del Informe rendido por la Dra. Jeannie Jay que el menor ha sido claro y enfático sobre sus sentimientos y es su deseo acabar este asunto que lo mantiene con estrés psicológico y emocional y la terapeuta avala dicho proceder.

Ciertamente, lo más sensato y que redunda en el mejor bienestar del menor, es dar por finalizado el proceso de reunificación terapéutico del menor con sus abuelos maternos. No debemos perder de perspectiva que, al adjudicar controversias relacionadas con menores, los tribunales deben guiarse por el principio de asegurar el bienestar y sus mejores intereses. *Rexach v. Ramírez*, 162 DPR 130 (2004).

**IV.**

Por los fundamentos antes expuestos, *revocamos* los dictámenes recurridos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones